

## NUMBER 13-08-623-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

ADRIAN GAMBOA,                                                                              Appellant,

v.

THE STATE OF TEXAS,                                                                        Appellee.

### On appeal from the 214th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Vela
### Memorandum Opinion by Justice Vela

Appellant, Adrian Gamboa, was indicted for the state jail felony of theft of property valued between $1,500 and $20,000. *See* TEX. PENAL CODE ANN. § 31.03(e)(4)(F)(iii) (Vernon Supp. 2008). Following a bench trial, the court found him guilty of the offense and assessed his punishment at one year's confinement in a state jail facility. Because we

sustain Gamboa's first issue, we reverse and remand.

## I. Factual Background

On June 10, 2008, Robstown police officers, Edward Day and Ramon Acosta, Jr., were on patrol when they saw a "suspicious vehicle" parked in front of the U.S. Travel Center, a truck stop that had been closed for several months. Mindful that there had been reports of criminal mischief and thefts at this location, Officer Day decided to investigate. When he pulled into the parking lot, he saw a passenger get into the vehicle, which then "took off" with the door still open. Thinking this was suspicious, Officer Day positioned his car behind the vehicle; he did not turn on his emergency lights, nor did he demand that the driver, Gamboa, exit the vehicle. Gamboa stopped the car, exited the vehicle, and approached Officer Day. Day asked Gamboa if he had anything illegal on his person, and Gamboa said that he had a syringe in his pocket and a pocket knife. Officer Day handcuffed Gamboa and then patted him down. After finding the syringe and pocket knife, Officer Day arrested Gamboa for possession of drug paraphernalia. After the arrest, Day called for an impound wrecker. After detaining Gamboa and his passenger, Officer Day inventoried the vehicle. During the inventory, he found TV cable, "copper that appeared to have come from the building," (the Travel Center), "wood that matched the wood that was surrounding the A/C units on the side of the building, and pliers." When the prosecutor showed Officer Day State's exhibits 2 and 3, Officer Day recognized them as, "copper tubing and wire that was recovered from the suspect's vehicle." When the prosecutor offered both exhibits into evidence, defense counsel objected, arguing that "there was no probable cause to pull the car over and search the car." Before ruling on the objection, the following exchange occurred between the trial court and Officer Day:

2

| THE COURT: | Was that copper wire and the items in plain view when you approached the car? |
|---|---|
| THE WITNESS: | It was part of the— |
| THE COURT: | During the inventory only? |
| THE WITNESS: | When I approached, it was partially covered; but it could still be viewed from outside the vehicle. |
| THE COURT: | And you saw it? |
| THE WITNESS: | Yes, Your Honor. |

The trial court then admitted the exhibits into evidence.

Detective Clifford Martin went to the U.S. Travel Center to help Officer Day with the investigation. Detective Martin stated that while at the scene, "I photographed the—there was some copper wire and black insulated wire, some copper tubing, and the air conditioning units where we found that the copper tubing had come from." He further explained that the officers matched up the ends of the copper wire to ends that had been cut away from the Travel Center. He stated that "the cuts on the copper tubing are consistent with the use of a pair of pliers like" the pliers found in Gamboa's vehicle. However, he was unable to positively identify the TV cable as coming from the U.S. Travel Center.

Joshua Gaines, who worked for the owner of the U.S. Travel Center, stated that "[n]obody from our company nor . . . authorized anybody to remove anything from the property."

Gamboa did not testify at the guilt-innocence phase of trial.

## II. Discussion

In his first issue, Gamboa argues that the officers did not have probable cause either to stop or to search his vehicle and, therefore, the trial court erred in admitting

3

evidence produced from the search.[1]  *See* U.S. CONST. amend. IV.  When considering a

trial court's ruling on the admission of evidence, we must determine whether the trial court

abused its discretion.  *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).  We

consider the ruling in light of what was before the trial court at the time the ruling was made

and uphold the trial court's judgment if it lies within the zone of reasonable disagreement.

*Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009).  If the trial court's ruling on

the admission of evidence is correct under any theory of law[2], the trial court's decision

should not be disturbed, even if the trial court gives the wrong reason for its ruling.  *See*

*Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

*A. Was Gamboa Illegally Detained?*

       We must first decide whether Gamboa was illegally detained.  A seizure or detention

occurs if, in light of all the circumstances surrounding an encounter between a police

officer and an individual, the officer's conduct would communicate to a reasonable person

that he or she is not free to go, or not free to refuse the officer's requests.  *Reyes v. State*,

899 S.W.2d 319, 323 (Tex. App.–Houston [14th Dist.] 1995, pet. ref'd).  A person is seized

"if, from his or her perspective, there has been such a display of official authority that a

reasonable person would not have felt that he or she was free to leave."  *Shelby v. State*,

888 S.W.2d 231, 233 (Tex. App.–Houston [1st Dist.] 1994, pet. ref'd).  However, "a person

has not been seized until he or she has yielded to a law enforcement officer's show of

authority or when officers physically limit his [or her] movement."  *Johnson v. State*, 912

S.W.2d 227, 234 (Tex. Crim. App. 1995).  Texas courts have held that when a police

---

[1] The appellate record does not show that a motion to suppress was ever filed in this case.

[2] We note that the State in its appellate brief does not challenge Gamboa's argument that the warrantless search was improper.  We will, however, still determine whether the trial court abused its discretion in admitting this evidence.

officer activates the cruiser's emergency lights, the officer has made a sufficient showing of authority to turn a consensual encounter into a detention or seizure. *See Garza v. State*, 771 S.W.2d 549, 557 (Tex. Crim. App. 1989); *Klare v. State*, 76 S.W.3d 68, 73 (Tex. App.–Houston [14th Dist.] 2002, pet. ref'd). But, the mere presence of a patrol car in close distance to the motorist is not sufficient to constitute a seizure; moreover, if the defendant initiates contact with the law enforcement officer by approaching the patrol car, no detention has occurred. *Beasley v. State*, 674 S.W.2d 762, 767 (Tex. Crim. App. 1982); *Garza*, 771 S.W.2d at 557 (citing *United States v. Weir*, 748 F.2d 459, 460 (8th Cir. 1984)).

Here, after Officer Day observed Gamboa's vehicle parked in front of the truck stop, he pulled into the parking lot and saw a passenger get into the vehicle. The vehicle "took off" with the door still open. Officer Day had turned his car around and was positioned behind the vehicle when the vehicle stopped. Gamboa got out of the car and approached Officer Day. Gamboa contends that, when Officer Day positioned himself behind him, Officer Day, in effect, stopped him and prevented him from leaving the parking lot. However, Officer Day's presence in the vicinity of Gamboa's vehicle is insufficient to deem the encounter a "stop." *See Beasley*, 674 S.W.2d at 766 (holding that the positioning of patrol cars next to and behind appellant was not enough evidence on which the court could resolve the issue of an illegal seizure). Although Officer Day entered the parking lot after seeing what he deemed a suspicious vehicle at a closed business reported to be an area of criminal activity, he did not engage in any conduct that would signal his detention of Gamboa, such as turning on his emergency lights or approaching him and demanding that he step out of the vehicle. His testimony showed that Gamboa was the one that approached Officer Day. Additionally, evidence adduced at trial showed that there was a paved road through which Gamboa and his passenger could have left the area. Officer

Day's positioning his patrol car behind Gamboa's vehicle did not keep Gamboa from leaving. We conclude that a reasonable person would have felt that he was free to leave under these circumstances, and that Gamboa was not illegally detained. We need not determine, then, whether there was probable cause to stop Gamboa's vehicle.

*B. Was Gamboa's Vehicle Illegally Searched?*

*1. The Plain-View Exception*

Gamboa also argues that the law enforcement officers did not have probable cause to search his vehicle. Since this was a warrantless arrest, we must determine whether any exceptions to the warrant requirement apply; we begin with analysis of the "plain view" exception.

A "seizure of an object is lawful under the plain-view exception" to the warrant requirement if three criteria are met. *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009). "First, law enforcement officials must lawfully be where the object can be 'plainly viewed.' Second, the 'incriminating character' of the object in plain view must be 'immediately apparent'[3] to the officials. And third, the officials must have the right to access the object." *Id*. (footnotes omitted). In determining whether evidence of an incriminating nature is immediately apparent, we are not concerned with whether an officer had actual *knowledge* of the incriminating evidence; we are only concerned with whether there is probable cause to believe that the discovered evidence is connected to criminal activity. *Joseph v. State*, 807 S.W.2d 303, 308 (Tex. Crim. App. 1991) (citing *Texas v. Brown*, 460 U.S. 730 (1983))(emphasis added). If further investigation is required to attain

---

[3] In *Coolidge v. New Hampshire*, the United States Supreme Court stated: "Of course, the extension for the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." 403 U.S. 443, 465-66 (1971) (plurality opinion).

6

probable cause, the evidence cannot be legally seized by the official under the "plain-view" doctrine. *White v. State*, 729 S.W.2d 737, 741 (Tex. Crim. App. 1987).

The Texas Court of Criminal Appeals has identified the type of evidence that falls under the "plain-view" doctrine. For example, in *White v. State*, officers responded to a disturbance call in an apartment complex and, at the complex manager's request, entered the apartment to assess damages after questioning the tenants. *Id.* at 738. Once inside the apartment, an officer noticed that there was a large amount of personal property in the apartment and began to suspect that it was stolen. *Id.* at 739. After taking a serial number off of the stereo without moving it and writing down the name and address that were written on a backpack found on the floor, the officer telephoned the police department and confirmed his suspicions. *Id.* The Court of Criminal Appeals stated that the "plain-view" doctrine could not be invoked because it was not immediately apparent that the items were stolen; it was only after the officer called in and was read the incident report over the phone that he had sufficient probable evidence to arrest the tenants. *Id.* at 741.

Here, although Officer Day saw a portion of the property in plain view inside Gamboa's vehicle as he was approaching the vehicle, the State did not offer any evidence that the incriminating nature of the property was immediately apparent to the officer. The evidence shows that it was not until he and Detective Martin investigated further by comparing the evidence found in the car to the tubing of the building and matching up the cut tubes that probable cause came into existence. Because the State did not prove that it was immediately apparent to Officer Day that the property from Gamboa's vehicle constituted evidence of a crime, the State failed to meet its burden of proving the reasonableness of the search and seizure under the plain-view doctrine.

7

*2. The Inventory Doctrine*

The "inventory doctrine" permits police to search impounded vehicles to make an inventory of items in the vehicle in order to: (1) protect the owner's property; (2) protect the police from lost-property claims; and (3) protect the police from dangerous contents. *State v. Stauder*, 264 S.W.3d 360, 363 (Tex. App.–Eastland 2008, pet. ref'd) (citing *Colorado v. Bertine*, 479 U.S. 367, 372 (1987)); *South Dakota v. Opperman*, 428 U.S. 364, 369-70 (1976)). "An inventory search is constitutionally permissible as long as it is not a 'ruse for general rummaging in order to discover incriminating evidence.'" *Id*. (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990)). "Inventories conducted pursuant to standard police procedures are considered reasonable under the Fourth Amendment." *Id*. The court of criminal appeals has long held that, "to be constitutional, an inventory search must not deviate from police department policy and that the State may satisfy its burden by showing (1) an inventory policy existed and (2) the policy was followed." *Stauder*, 264 S.W.3d at 364 (citing *Moberg v. State*, 810 S.W.2d 190, 195 (Tex. Crim. App. 1991); *Evers v. State*, 576 S.W.2d 46, 50 n.5 (Tex. Crim. App. 1978)). In *Benavides v. State*, the court of criminal appeals stated that "before an inventory search can be upheld as lawful there must be an inquiry into the lawfulness of the impoundment." 600 S.W.2d 809, 810 (Tex. Crim. App. 1980). "In order for the impoundment of an automobile to be lawful, [its] seizure . . . must be reasonable under the Fourth Amendment." *Id*. at 811.[4]

---

[4] The *Benavides* Court provided a non-exclusive list of circumstances under which police may lawfully impound vehicles: (1) removal from an accident scene; (2) impoundment for parking violations; (3) when the vehicle's owner or driver requests or consents to the impoundment; (4) when the automobile is stolen or police have a reasonable belief that it is stolen; (5) when the vehicle is abandoned, a hazard, or mechanically defective to the extent it creates a danger to others using public streets or highways; (6) when the vehicle's driver is arrested for being intoxicated while in the vehicle and no one else is available to drive the vehicle or otherwise safeguard it; (7) if a statute authorizes the impoundment; and (8) when the vehicle's driver is removed from the vehicle and placed under custodial arrest, and no other alternatives are available other than impoundment to insure the vehicle's protection. *Benavides v. State*, 600 S.W.2d 809, 811 (Tex. Crim. App. 1980).

Here, the State offered no evidence to show the lawfulness of the impoundment of Gamboa's vehicle. The State failed to show that there were no other alternatives available other than impoundment to insure the vehicle's protection. There was no evidence that the car was impeding the flow of traffic or that it was a danger to public safety. While Gamboa himself may not have been able to attend to the vehicle, he may have been able to instruct someone else, such as a family member or a friend, to do it for him. *See id.* at 812.[5] Furthermore, the State offered no evidence showing that an inventory policy existed and that such policy was followed in this case. Accordingly, the State has not sustained its burden of proof to show that the inventory was proper under the Fourth Amendment. *See Gauldin v. State*, 683 S.W.2d 411, 415 (Tex. Crim. App. 1984) (holding that "[i]n the absence of testimony regarding actual adherence to standard police inventory procedure, the State has not sustained its burden of proof"), *overruled on other grounds by State v. Guzman*, 959 S.W.2d 631, 633 (Tex. Crim. App. 1998); *see also United States v. Rowland*, 341 F.3d 774, 780 (8th Cir. 2003) (holding that law enforcement's failure to follow standard procedures and record all property, thereby ensuring the safe return of that property, showed that inventory search was improper). We therefore conclude that the inventory search of Gamboa's vehicle and the seizure of the property inside the vehicle pursuant to that search were unlawful.

*3. The Probable Cause Exception*

"A warrantless search of a vehicle is reasonable if law enforcement [officers] have probable cause to believe . . . the vehicle contains contraband." *Wiede v. State*, 214

---

[5] "[W]hile it may have been standard policy procedure to impound the vehicle of a person who is arrested we conclude that the Fourth Amendment protection against seizures cannot be whittled away by a police regulation. For such a procedure there must be some reasonable connection between the arrest and the vehicle." *Id.* at 812.

S.W.3d 17, 24 (Tex. Crim. App. 2007); *see Maryland v. Dyson*, 527 U.S. 465, 467 (1999).[6]

Probable cause exists when "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that [either] contraband or evidence of a crime will be found." *Wiede*, 214 S.W.3d at 24. "Known facts and circumstances include those personally known to law enforcement officers or those derived from a 'reasonably trustworthy' source." *Id*. (quoting *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005)). "To determine [if] probable cause existed to believe evidence of a crime would be found in a certain place, we look at the totality of the circumstances to determine if there is a substantial basis for concluding . . . probable cause existed at the time of the questioned action." *Wiede v. State*, 157 S.W.3d 87, 95 (Tex. App.–Austin 2005, pet. ref'd). "When determining probable cause, the focus is on the facts and circumstances known to law enforcement officers at the time of the search." *Wiede*, 214 S.W.3d at 26.

After considering the totality of the known facts and circumstances that were before the trial court, we conclude that the State failed to show that there was probable cause for Officer Day to believe that evidence of a crime involving the seized property would be found in Gamboa's vehicle at the time he searched it. Even though Officer Day knew, prior to the search, that there had been reports of thefts and criminal mischief at the truck stop, "[a]n officer's inarticulate hunch, suspicion, or good faith is insufficient to constitute probable cause." *Wiede,* 157 S.W.3d at 95 (citing *Brown v. State*, 481 S.W.2d 106, 110 (Tex. Crim. App. 1972)).

---

[6] In *Maryland v. Dyson*, the United States Supreme Court stated that "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more.'" 527 U.S. 465, 467 (1999) (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam)).

*4. Search Incident to Arrest Exception*

Recently, the United States Supreme Court stated that:

> "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies."

*Arizona v. Gant*, 129 S.Ct. 1710, 1723-24 (2009).

Based upon this record, it does not appear that Officer Day searched the vehicle incident to an arrest. The evidence does not show that either Gamboa or his passenger were within reaching distance of the passenger compartment at the time of the search. Even though it is reasonable to believe that the vehicle contained evidence of the offense of arrest, i.e. possession of drug paraphernalia, the property Officer Day removed from the vehicle was not "evidence of the offense of arrest." Because these justifications are absent, any warrantless search of the vehicle incident to arrest was unreasonable. *See id*.

Accordingly, we hold that the State failed to meet its burden to show that the warrantless search was proper. Because the search of Gamboa's vehicle and the subsequent seizure of the property were unlawful, we hold that the trial court abused its discretion by admitting the seized property into evidence. Issue one is sustained. Because of our disposition of issue one, we need not address the remaining issues. *See* Tᴇx R. Aᴘᴘ. P. 47.1.

11

## III. Conclusion

We reverse the judgment and remand the case to the trial court.


ROSE VELA
Justice


Do not publish.
Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and
filed this 6th day of August, 2009.

12