

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00398-CR

**CHRISTOPHER SHANNON ROBLES,**

                                                **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                **Appellee**

**From the 19th District Court**
**McLennan County, Texas**
**Trial Court No. 2011-1464-C1**

## MEMORANDUM OPINION

In this appeal, appellant, Christopher Shannon Robles, challenges his conviction for aggravated sexual assault of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(ii), (e) (West Supp. 2012). Specifically, in two issues, appellant contends that the trial court erred in allowing: (1) an investigating officer to testify about the truthfulness of the child victim; and (2) psychologist Dr. William Lee Carter to testify in violation of the rule providing for the exclusion of witnesses. We affirm.

# I. BACKGROUND

Here, the indictment alleged that appellant intentionally or knowingly caused the penetration of the mouth of J.K., a child younger than fourteen years old and not appellant's spouse, by means of his penis. The incident allegedly transpired on or about May 15, 2002.

At trial, J.K. testified that, on the date in question, she was seven years old when she went over to appellant's apartment to play with another girl who was her age. J.K. noted that her mom trusted appellant to watch her and her friend while they were playing. J.K. recounted that appellant liked to play jokes on the kids. According to J.K., on one particular occasion, appellant told J.K.'s friend to go to a back room because he and J.K. were going to play a food game. J.K. recalled that appellant blindfolded her and told her to sit on her knees on the floor by the couch. Later, she heard "a zipper go down," though she did not think anything of it at the time. Appellant then instructed J.K. "to taste the food and just guess what it was." J.K. tasted chocolate syrup, but she quickly recognized that the chocolate syrup was on appellant's penis. Appellant told J.K. to lick his penis "like a lollipop" as he "kept putting it in and out" of her mouth. J.K. noted that appellant eventually ejaculated in her mouth and that she was instructed to swallow it. Thereafter, J.K. heard a zipper noise once again. Afterwards, J.K. met her friend in the back room and continued playing.

J.K. did not tell anyone about the incident until sometime in 2008 or 2009. J.K.'s mother recalled that J.K. told her about the incident while they were watching a movie where sexual acts took place. J.K.'s mother testified that she responded to J.K.'s story

by shutting down and blocking it out. Consequently, J.K.'s mother did not report the incident to anyone, including law enforcement.

Sometime in 2011, law enforcement received information that J.K. was a possible victim of sexual abuse. While in a ninth-grade-home-economics class, J.K. learned about rape and realized that what had happened to her was wrong. Shortly thereafter, J.K. was summoned to meet with the principal of Lorena High School and Tom Dickson, the Chief of Police for Lorena. During this meeting, Chief Dickson arranged for J.K. to place recorded telephone calls to appellant; however, the reception of the calls was not always clear.

In addition to J.K.'s testimony, the State also proffered the testimony of Chief Dickson and Dr. Carter. During Chief Dickson's testimony, the trial court admitted over objection a DVD recording of an interview of appellant by Chief Dickson. Statements made in the DVD recording serve as a basis for appellant's first issue.

At the conclusion of trial, the jury found appellant guilty of the charged offense and sentenced him to seventy-five years' incarceration in the Institutional Division of the Texas Department of Criminal Justice with a $10,000 fine. This appeal followed.

## II. CHIEF DICKSON'S STATEMENTS DURING THE INTERVIEW WITH APPELLANT

In his first issue, appellant contends that the trial court abused its discretion by allowing Chief Dickson to give an opinion about the truthfulness of J.K. or the class of persons to which J.K. belongs. The State responds that Chief Dickson's statement transpired during his investigation of appellant and was not a direct comment on the truthfulness of J.K.

## A. Applicable Law

We review the trial court's admission of evidence for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). If the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's decision if it lies within the zone of reasonable disagreement. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009). Moreover, we must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

## B. Discussion

Here, the trial court admitted a DVD recording of the Chief Dickson's interview of appellant and allowed the recording to be played for the jury. A transcript of the interview was also admitted. On appeal, appellant complains about the following exchange that transpired during the interview:

| | |
|---|---|
| Chief Dickson: | Would there have been any reason why anybody would have thought anything sexual was going on. I mean, why . . . |
| Appellant: | I don't . . . |
| Chief Dickson: | Generally out of the blue people just don't say that. I mean what would give somebody any idea like that? |
| Appellant: | I have no idea. I have never done anything like that. I have children myself, you know. |

Appellant argues that Chief Dickson's statement that people do not allege sexual abuse out of the blue constitutes an improper comment on J.K.'s truthfulness. We disagree.

The Texas Court of Criminal Appeals has held that a direct opinion on the truthfulness of a child, from either a lay witness or an expert witness, is inadmissible. *See Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997); *Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993); *see also York v. State*, No. 10-11-00413-CR, 2012 Tex. App. LEXIS 4963, at *3 (Tex. App.—Waco June 20, 2012, pet. ref'd) (mem. op., not designated for publication). However, Chief Dickson's statement did not directly reference J.K. or the class of persons to which J.K. belongs. Furthermore, unlike the pediatrician in *Yount*, Chief Dickson did not opine as to whether J.K. was telling the truth. *See* 872 S.W.2d at 707-08. In fact, on cross-examination, Chief Dickson suggested that:

> It is, but I would think that we look at—an example would be, we ask, "Why would somebody do this?" We're trying to find out, is somebody mad at them, are they going through a divorce, what is causing this, is there something going on? We try to look at it from all angles on the investigation.

Essentially, with his "out of the blue" statement, Chief Dickson was trying to determine, as part of his investigation, why J.K. would make such an allegation against appellant, especially given how much time had elapsed between the alleged incident and the outcry.

Based on our review of the record, we do not believe that Chief Dickson expressed an opinion as to whether J.K.'s allegations had merit or if she was a trustworthy witness. Accordingly, we cannot say that Chief Dickson's statement rises

to the level of a direct opinion on the truthfulness of J.K. *See Schutz*, 957 S.W.2d at 59; *Yount*, 872 S.W.2d at 708; *see also York*, 2012 Tex. App. LEXIS 4963, at *3.[1] And as such, we cannot conclude that the trial court's decision to admit the complained-of evidence was outside the zone of reasonable disagreement as to constitute an abuse of discretion.

---

[1] In particular, in *York*, this Court concluded that, under arguably more persuasive facts presented below, that a police detective did not give a direct opinion on the truthfulness of a child victim:

> Detective Kimberly Clark is with the Crimes Against Children Unit of the Waco Police Department. She testified at trial that she worked on 450 cases involving sexual abuse of children. Detective Clark further testified that she has been trained in dealing with false allegations of sexual abuse and that she has encountered cases that she believed involved false allegations. The State then asked, "in those cases you wouldn't proceed to an arrest, is that right?" York objected that the State was bolstering the case. The State responded that the question was asking about Detective Clark's experience. The trial court overruled the objection; however, Detective Clark never answered the question on whether she proceeds to arrest in cases that she believes involve a false allegation.

2012 Tex. App. LEXIS 4963, at **2-3 (Tex. App.—Waco June 20, 2012, pet. ref'd) (mem. op., not designated for publication).

Moreover, Chief Dickson's statement in this case is not as suggestive as the following testimony elicited in *Yount*, which was deemed to be improper:

| Q: | Okay. Of those hundreds that you've examined, how may have you found to be unfounded? |
| A: | I'm sorry. When you mean invalid, that the child was not telling the truth? |
| Q: | Right, or unfounded that you |

. . . .

| [Defense counsel]: | That's just a roundabout way to bolster the child's testimony. It's not proper. I object to that. |
| THE COURT: | Objection overruled. |
| A: | I have seen very few cases where the child was actually not telling the truth. |

872 S.W.2d 706, 707-08 (Tex. Crim. App. 1993).

*See De La Paz*, 279 S.W.3d at 343; *Billodeau*, 277 S.W.3d at 39; *Prible*, 175 S.W.3d at 731.

We overrule appellant's first issue.

### III. DR. CARTER'S TESTIMONY

In his second issue, appellant asserts that the trial court erred in allowing Dr. Carter to testify in violation of the rule providing for the exclusion of witnesses.

### A. Applicable Law

Texas Rule of Evidence 614, otherwise referred to as "the Rule," provides for the exclusion of witnesses from the courtroom during trial. TEX. R. EVID. 614. The purpose of Rule 614 is to prevent the testimony of one witness from influencing the testimony of another. *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005). Once Rule 614 is invoked, witnesses are instructed by the trial court that they cannot converse with one another or with any other person about the case, except by permission from the court, and the trial court must exclude witnesses from the courtroom during the testimony of other witnesses. TEX. R. EVID. 614; *see* TEX. CODE CRIM. PROC. ANN. art. 36.06 (West 2007). If a witness violates Rule 614, the trial court still has the discretion to allow testimony from the witness. *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996). In reviewing the trial court's decision to allow testimony, we determine whether the appellant was harmed or prejudiced by the witness's violation. *Id.* Harm is established by showing: (1) that the witness actually conferred with or heard testimony of other witnesses; and (2) that the witness's testimony contradicted the testimony of a witness from the opposing side or corroborated testimony of a witness he had conferred with or heard. *Id.*

However, Rule 614 does not authorize the exclusion of certain witnesses. *See* TEX. R. EVID. 614. In criminal cases, those witnesses are,

> (1) a defendant who is a natural person, the representative of a defendant that is not a natural person, (2) a person whose presence a party shows to be essential to the presentation of the party's case, and (3) a victim if the court does not determine that the victim's testimony would be materially affected by hearing other testimony.

*Russell*, 155 S.W.3d at 180 (citing TEX. R. EVID. 614). In particular, the Texas Court of Criminal Appeals has held that a trial court is vested with discretion and may permit expert witnesses to be exempt from the rule so they may hear other witnesses testify and then base their opinions on such testimony. *Lewis v. State*, 486 S.W.2d 104, 106 (Tex. Crim. App. 1972); *see Caron v. State*, 162 S.W.3d 614, 618 (Tex. App.—Houston [14th Dist.] 2005, no pet.). "Under Rule 614, a party has the burden to show that its witness is one of those whose exclusion from the courtroom is not authorized by that Rule." *Russell*, 155 S.W.3d at 180 (citing *Moore v. State*, 882 S.W.2d 844, 848 (Tex. Crim. App. 1994)).

**B. Discussion**

Just prior to Dr. Carter's testimony, appellant objected under Rule 614 and article 36.03 of the Texas Code of Criminal Procedure. *See* TEX. R. EVID. 614; *see also* TEX. CODE CRIM. PROC. ANN. art. 36.03. The State explained that Dr. Carter had been designated as an expert witness and that his presence was necessary during the testimony of J.K.'s mother because,

> we are going to have him explain some of the things about her testimony and why she took the actions she took in terms of not doing anything at all when she was first told. We thought it was necessary for him to

observe her on the stand in order to more completely testify about why she may have behaved the way she did.

Appellant responded that he invoked the Rule at the beginning of trial and that the State should have sought permission from the trial court to exempt Dr. Carter from the Rule when the Rule was first invoked. The trial court overruled appellant's objection and accepted Dr. Carter's testimony.

On appeal, appellant asserts "that the State usurped the trial court's authority to determine which witnesses were subject to the [R]ule." However, he also acknowledges that "if the State believes that an expert's exemption from the Rule is necessary, the State is required to obtain such permission by demonstrating to the court that the expert is a person whose presence is shown by a party to be essential to the presentation of the party's case" (internal quotations omitted). As stated earlier, the State designated Dr. Carter as an expert witness prior to trial and explained to the trial court why his presence in the courtroom was necessary to the presentation of the State's case.

Appellant does not cite, nor are we aware of, authority that requires the State to obtain permission or seek an exemption at the point in which the rule is invoked. Here, the State provided its explanation prior to Dr. Carter's testimony, which, in turn, allowed the trial court the opportunity to exclude Dr. Carter's testimony, if necessary, prior to taking Dr. Carter's testimony. And in its discretion, the trial court allowed Dr. Carter to testify, despite appellant's invocation of the Rule. *See Lewis*, 486 S.W.2d at 106; *see also Caron*, 162 S.W.3d at 618. Given this, we cannot say that the State's actions usurped the trial court's authority to determine whether Dr. Carter was subject to the

Rule.  Accordingly, based on our review of the record, we cannot say that appellant has adequately demonstrated that the trial court abused its discretion in allowing Dr. Carter to testify in this case.[2]  *See* TEX. R. EVID. 614; TEX. CODE CRIM. PROC. ANN. art. 36.06 (West 2007); *see also Bell*, 938 S.W.2d at 50; *Cook v. State*, 30 Tex. Ct. App. 607, 18 S.W. 412, 412 (1892) ("The admissibility of witnesses who have violated the rule, or who have not been placed under the rule, is within the sound discretion of the trial court, and such discretion will be presumed to be correctly exercised until the contrary appears.").  We overrule appellant's second issue.

## IV.  CONCLUSION

Having overruled both of appellant's issues, we affirm the judgment of the trial court.


AL SCOGGINS
Justice


Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed November 7, 2013
Do not publish
[CRPM]

---

[2] It is also noteworthy that appellant did not object to Dr. Carter's presence in the courtroom when first discovered.